SHACKLEFORD *v*. STATE.

Opinion delivered November 12, 1923.

HOMICIDE—ERRONEOUS INSTRUCTION—HARMLESS ERROR.—While an instruction in a murder case that "if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, armed with a deadly weapon, sought the deceased with the felonious intent to kill him, or sought, or brought on, or voluntarily entered into, the difficulty with the deceased, with the felonious intent to take his life, then the defendant cannot invoke the law of self-defense, no matter how imminent the peril in which he found himself placed," was incorrect in omitting to add the qualifications, *unless defendant first endeavored, in good faith, to retire from the conflict*, such error was harmless where there was no evidence that defendant attempted, in good faith, to retire from the conflict.

Appeal from Nevada Circuit Court; *James H. McCollum,* Judge; affirmed.

*J. S. Utley,* Attorney General, and *John L. Carter,* Assistant, for appellee.

McCulloch, C. J.   The crime charged against appellant in the indictment was murder in the first degree, alleged to have been committed by killing J. D. Phillips, and, on the trial of the case, appellant was convicted of voluntary manslaughter, and his punishment was fixed at two years in the penitentiary.

No brief has been filed on behalf of the appellant, and it is only by an examination of the motion for a new trial that we can determine the questions raised on the appeal.   There is an assignment in the motion relating to the insufficiency of the evidence, and numerous assignments with respect to the court's charge to the jury; some of them are not of sufficient importance to discuss in this opinion.   The evidence is sufficient to sustain the verdict.

Phillips lived at the village of Glenville, in the southeast part of Nevada County.   He was a merchant, and was also postmaster at that place.   Appellant also lived at Glenville, about one-fourth of a mile distant from Phillips' store, and the killing occurred at appellant's home, out in front of the gate, on the morning of May 21, 1923.   There were no eye-witnesses to the killing, but appellant admits that he fired the shot which killed Phillips, and he claims that he did so in necessary self-defense.

When Phillips arose on the morning in question, he complained of feeling ill, and walked across the road to the store in his shirt-sleeves and opened up the store. Shortly afterwards two little girls, daughters of appellant, came to the store, and stated to Phillips that their father had requested him to come up to the latter's house, and Phillips sent word by the children that he could not, at that time, comply with the request.   About ten minutes afterwards appellant drove down to the

store in a wagon and called Phillips out, and appellant asked Phillips to go with him up to his (appellant's) house, saying at the time that he had a proposition to make to Phillips. Phillips got into the wagon with appellant, and they drove off to appellant's house, and in a few minutes the noise of a gunshot was heard. The persons who went up to the house found Phillips' dead body lying on the ground. He had been shot through the neck. The body was about twenty feet from the gate, and the team of mules was standing near by, headed towards a large tree. One of the witnesses testified that at the foot of this tree there was a print on the ground of a gun-stock.

Phillips was, according to the testimony adduced by the State, unarmed at the time the killing occurred, and was in his shirt-sleeves.

Appellant testified as a witness on his own behalf, and stated that, about three weeks before the killing occurred, he was informed by his wife that Phillips had made an indecent proposal to her, and that he accosted Phillips concerning the matter, and that the latter denied the charge. He stated that on the morning in question, a few minutes before he left home with his wagon, his wife told him that Phillips had repeated the proposals to her, and he testified that he went down to Phillips' store and, after calling him out, stated to Phillips that he wanted the latter to accompany him to his home, as he had a proposition to submit to him concerning his wife, meaning that he wanted Phillips to confront his wife in regard to the charge against him of having made an indecent proposal to her. He stated that Phillips replied that he did not care to discuss the matter in the presence of his family, but would get into the wagon and drive up to the house with him. Appellant stated that, after they had got up to his house and they both got out of the wagon, he saw the print of a pistol in Phillips' bosom, and that when he proposed to Phillips that they go into the house,

Phillips replied, "No, we can settle it here," and
started to draw his pistol, whereupon appellant fired
the shot that killed Phillips. He stated that, when he
got out of the wagon, he took the gun into his hand, as
it was lying in the wagon, partially covered by a blanket,
or robe. Appellant carried the mail between Glenville
and Stephens, and he testified that he usually carried
his shotgun on the trip.

The evidence warranted the jury in finding that
Phillips was unarmed at the time he was killed, and
that the killing was unjustified. It is unnecessary to
discuss the testimony in further detail, or to attempt
an analysis of it in demonstrating its probative force.

One of the assignments of error set forth in the
motion for a new trial relates to the ruling of the court
in permitting the State to prove by witnesses that appel-
lant's girls came down to the store on the morning in
question with a message to Phillips from their father.
Appellant himself testified that he sent the children
down there with the message, so there could have been
no prejudice to defendant in admitting the testimony
of other witnesses concerning the message delivered by
the children to Phillips.

The court's charge to the jury was very full, and
covered the different grades of homicide, the law of
self-defense, and appropriate declarations on the sub-
ject of reasonable doubt.

Many of the instructions requested by appellant's
counsel were given, some of them with slight modifica-
tion, and the refused ones were mere repetitions of other
instructions the court had given.

The court gave the following, over appellant's
objection:

"11. If you believe from the evidence in this case,
beyond a reasonable doubt, that the defendant, armed
with a deadly weapon, sought the deceased with the
felonious intent to kill him, or sought or brought on or
voluntarily entered into the difficulty with the deceased

with the felonious intent to take his life, then the defendant cannot invoke the law of self-defense, no matter how imminent the peril in which he found himself placed."

This instruction was not a correct declaration of the law, in that it omitted the qualification that appellant must first have endeavored in good faith to retire from the conflict; but this omission was not prejudicial, for the reason that there was no proof which justified a submission of that issue. Appellant's sole contention was that Phillips assaulted him with a pistol, and that he fired the shot in necessary self-defense, and there was no phase of the evidence which would have warranted a finding that appellant, though the aggressor in the difficulty, attempted in good faith to retire.

Several of the instructions requested by appellant's counsel on the subject of appearances of danger were modified by amendments incorporating the statement that appellant must have been acting without fault or carelessness. This modification was proper in order to make the instructions complete, and there was no error in this respect.

Several instructions were requested by appellant on the subject of reasonable doubt, but, as this subject was fully covered in the court's charge, there was no error in refusing to give those asked.

Finding no error in the record, the judgment is affirmed.